```
             IN THE UNITED STATES DISTRICT COURT FOR
            THE DISTRICT OF MARYLAND, NORTHERN DIVISION
                                  *
BARRY HENDERSON,                  *

     Petitioner,                  *

          v.                      *    CIVIL NO.:    WDQ-09-1076
                                       CRIMINAL NO.: WDQ-07-0497
                                  *
UNITED STATES OF AMERICA,
                                  *
     Respondent.
                                  *

*    *    *    *    *    *    *    *    *    *    *    *    *
```

MEMORANDUM OPINION

Pending is Barry Henderson's *pro se* motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. A hearing was held on November 20, 2009. Paper No. 34. For the following reasons, the motion will be denied.

I.   Background

On October 25, 2007, Henderson was indicted for possession with intent to distribute cocaine.[1] Paper No. 1. On February 14, 2008, Henderson pled guilty pursuant to an agreement with the Government. Gov't Opp., Ex. 1 [hereinafter *Plea Agmt.*]. The Government and Henderson waived the right to appeal a sentence within the guideline range from an adjusted offense level of 31, criminal history category VI: 188-235 months. Plea Agmt. ¶ 12. At the February 14, 2008 hearing, Henderson acknowledged that he

---

[1]   In violation of 21 U.S.C. § 841(a).

1

was giving up his right to appeal a sentence within that range. Plea Hearing 12:16-22, February 14, 2008.  Henderson also acknowledged in the Plea Agreement that he is a career offender. Plea Agmt. ¶ 8.

On May 2, 2008, Henderson was sentenced to 188 months imprisonment.  Paper No. 17.  According to Henderson, after sentencing he "made numerous requests" to his counsel, Ray M. Shepard, Esquire, to file an appeal.  Pet. Mot. at 1.  No timely appeal was filed.  *Id.*

On September 12, 2008, Henderson filed a *pro se* appeal. Paper No. 18.  On January 9, 2009, the Court of Appeals for the Fourth Circuit granted the Government's motion to dismiss the appeal as untimely.  Paper Nos. 21 & 22.  On April 6, 2009, the Fourth Circuit denied Henderson's petition for rehearing.  Paper No. 24. On April 27, 2009, Henderson filed this motion to vacate. Paper No. 26.  On November 20, 2009, this Court held a hearing on that motion.  Paper No. 34.

II.  Analysis

The Sixth Amendment guarantees the effective assistance of counsel.  *Strickland v. Washington*, 466 U.S. 668, 686 (1984).  To prove ineffective assistance of counsel, Henderson must show that: (1) counsel's deficient performance (2) prejudiced his defense.  *Id.* at 687.  Henderson must establish that counsel made errors so serious that the "representation fell below an

2

objective standard of reasonableness." *Id.* at 688.  Henderson must also demonstrate prejudice by showing a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

Judicial scrutiny of attorney performance asks whether counsel's assistance was reasonable under the circumstances. *Id.* at 688.  This scrutiny is highly deferential. *Id.* at 689.

A. Failure to Appeal

Henderson argues that Shepard was ineffective as counsel because he ignored Henderson's request for an appeal. Pet. Mot. at 1.  The Government counters that Henderson waived his right to appeal in the Plea Agreement and never asked Shepard to appeal. Gov't Opp. at 2.

An attorney must file an appeal when his client "unequivocally instruct[s]" him to do so. *United States v. Poindexter*, 492 F.3d 263, 269 (4th Cir. 2007); *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000).  If so instructed, an attorney is required to file an appeal even if (1) the client has waived his right to appeal, and (2) it would be harmful to the client's interests. *Poindexter*, 492 F.3d at 273.

In most cases, counsel must consult with defendants about an appeal. *Roe*, 528 U.S. at 481.  "[C]ounsel has a constitutionally imposed duty to consult . . . when there is reason to think either (1) that a rational defendant would want to appeal . . . ,

3

or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing."[2]  *Id.* at 480.  An attorney who consults with his client and is not instructed to appeal is not deficient when he fails to appeal.  *Id.* at 478.

When counsel has been unequivocally instructed but fails to file a timely notice of appeal, "prejudice is presumed because it results in the 'forfeiture' of the appellate proceeding." *Poindexter*, 492 F.3d at 268.  If a defendant did not instruct his attorney to appeal and his attorney did not consult with him about it, the "defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed."  *Roe*, 528 U.S. at 484; *Poindexter*, 492 F.3d at 268-69. The question is whether the defendant would have appealed, not whether his appeal would have been successful.  *Roe*, 528 U.S. at 486.

---

[2]  In making this determination, courts consider the information counsel knew or should have known, such as whether the conviction was the result of a trial or guilty plea. *Roe*, 528 U.S. at 480. When there is a plea, courts consider whether the defendant received the bargained for sentence, and whether the plea agreement waived appeal rights.  *Id.*

At the § 2255 Hearing on November 20, 2009, Shepard testified that Henderson "never asked [him] to note an appeal" after the sentencing.  § 2255 Hearing 19:16-18.  Henderson testified that "[a]fter [he] was sentenced . . . [he] asked [his] attorney to file a notice of appeal."  *Id*. 26:9-12.  Henderson's mother-in-law, Rehan Abdulillaha, testified that she asked Shepard whether there would be an appeal and whether he would be filing it, and he answered "yes" to both questions.  *Id*. 23:22-24:7.  Thus, "it was [her] understanding [from Shepard] that there would be an appeal."  *Id*. 24:21.  But Shepard does not recall that conversation and only remembers discussing with Henderson's family "that he was waiving [his right to appeal] in the plea agreement."  *Id*. 8:24-9:16.  Three letters from Henderson to Shepard were reviewed at the hearing;[3] none requested or refer to a request that Shepard file an appeal for Henderson.  *Id*.  18:13-2, 36:17-25.

Abdulillaha has a family connection with Henderson and her testimony does not resolve whether Henderson made an unequivocal

---

[3]  Henderson sent Shepard three letters dated: February 18, 2008; April 16, 2008; and June 25, 2009.  § 2255 Hearing 11:21-24.  The first two were written before Henderson's sentencing.  The third letter was received by Shepard post-sentencing and asked him to provide "an affidavit . . . stating where [he had] erred" to support Henderson's § 2255 petition, but it did not mention the appeal.  *Id*. 18:13-19:2.  Consistent with the contents of that letter, Shepard testified that he "receiv[ed] a letter from Mr. Henderson, but [he] did not discuss anything with him regarding appellate rights" after the sentencing.  *Id*. 10:21-23.

5

request to Shepard to appeal.  That letters from Henderson to Shepard did not mention the alleged request suggests that Henderson never made an appeal request.  Henderson received the sentence he bargained for; his 188 months incarceration was at the low end of the guideline range contemplated by the Plea Agreement in which Henderson waived his appeal.

From the review of the record, this Court finds that Henderson did not request that Shepard file an appeal.  Thus, Henderson's claim of ineffective assistance of counsel based on Shepard's failure to note an appeal must fail.

B.   Failure to Object to Career Offender Status

Henderson also argues that Shepard failed to object when the Court allegedly counted consolidated prior felony convictions as separate offenses in determining his career offender status. Pet. Mot. at 2.  The Government responds that Henderson agreed that (1) he had qualifying convictions, and (2) he is a career offender.  Gov't Opp. at 2-3; Plea Hr. 9:18-20, 10:3-17.

In the Plea Agreement, Henderson acknowledged felony convictions for: (1) CDS manufacturing and distribution (May 2006); (2) CDS possession with intent to distribute (June 2002); and (3) handgun on person (July 2002).  Plea Agmt. at 4.  He also agreed that with these predicate convictions, "he [was] a Career Offender."[4]  *Id.* ¶ 8.  Before signing the agreement, Henderson

---

[4]   Under U.S.S.G. § 4B1.1(a), Henderson is a career offender if

6

carefully reviewed it with Shepard, "[s]pecifically . . . the Factual and Advisory Guidelines Stipulation," and did "not wish to change any part of it." *Id.* at 7.

At sentencing, Henderson did not deny that he is a career offender. Sentencing 2:24-25, 5:2-4, May 2, 2008. Shepard noted an error in the dates for two consolidated prior felony convictions in the presentence report[5] but determined the error did not affect Henderson's career offender status. Sentencing 5:13-6:15. Shepard testified that he "took a hard look at whether or not [Henderson] was actually a career offender[] and determined that he was." Sentencing 7:6-9.[6]

Because Shepard conducted a diligent inquiry and found no basis for disputing Henderson's career offender status,

---

(1) he was at least eighteen years old at the time of the offense, (2) the instant offense is a felony that is either a violent crime or controlled substance offense, and (3) he has at least two prior felony convictions of either a violent crime or a controlled substance offense.

[5] During the sentencing, Shepard explained that from the presentence report "[i]t appears as if there are two separate convictions when, if fact, the facts and circumstances were on the same day, at the same time. The State chose to charge the drug offense and the handgun offense separately, but the cases were from the same set of facts and circumstances . . . there [was] an error [in the report] in terms of the sentencing date being November 13th and November 14th because they were actually on the same day." Sentencing 5:14-23.

[6] During the § 2255 Hearing, Shepard testified that he investigated Henderson's prior convictions by reviewing a videotape of Henderson's 2000 and 2002 guilty pleas and had found no basis for a *coram nobis* proceeding to invalidate the predicate convictions. § 2255 Hearing 19:19-20:15.

Henderson's has failed to show ineffective assistance of counsel.

C.   Certificate of Appealability

A certificate of appealability ("COA") must issue before a petitioner may appeal the court's decision in a 28 U.S.C. § 2255 case.  *See* 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b).  A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (*quoting Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were adequate to deserve encouragement to proceed further," *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (internal quotations omitted). Denial of a COA does not prevent Petitioner from seeking permission to file a successive petition or pursuing his claims upon receipt of such permission.

Because Henderson has not made a substantial showing of the denial of his constitutional rights, this Court will not issue a COA.

III. Conclusion

    For the reasons stated above, Henderson's motion will be denied.

February 18, 2010                                        _____/s/_____
Date                                                             William D. Quarles, Jr.
                                                                        United States District Judge